SO ORDERED.

SIGNED this 3rd day of November, 2015.



*Dale L. Somers*
Dale L. Somers
United States Bankruptcy Judge

_____

Designated for on-line use, but not designated for print publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| MICHELLE N. GORDON, | CASE NO. 14-21927 |
| | CHAPTER 7 |
| DEBTOR. | |
| CHINA ARBUCKLE, | |
| PLAINTIFF, | |
| v. | ADV. NO. 14-06079 |
| MICHELLE N. GORDON, | |
| DEFENDANT. | |

MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In this adversary proceeding Plaintiff China Arbuckle, formerly known as China Gordon, seeks a determination that her claim for payment of a $500,000 state court judgment against Debtor Michelle N. Gordon is not dischargeable under 11 U.S.C. § 523(a)(6).[1] Plaintiff, through her counsel Alan B. Gallas of Gallas & Schultz, has moved for summary judgment based upon the findings made when the judgment was entered. Debtor, through her counsel, Jay T. Grodsky and Todd A. Neilsen, opposes the motion. The Court has jurisdiction.[2]

**UNCONTROVERTED FACTS.**

When moving for summary judgment, Plaintiff sets forth a statement of uncontroverted facts regarding the state court proceedings in which she obtained the $500,000 judgment against Debtor. The individual paragraphs state they are supported by Plaintiff's "affidavit," but the copy of the affidavit attached to the pleading is neither signed by Plaintiff nor notarized. The "affidavit" refers to documents filed in the state court. Unauthenticated copies of the pleadings are attached to the "affidavit." Plaintiff's

---

[1] Doc. 1. The Complaint alleges the claim is nondischargeable under 11 U.S.C. § 1328(a)(6), but this case is under Chapter 7, not Chapter 13, and there is no § 1328(a)(6). The docket sheet states the claim is brought under § 523(a)(6). The parties have proceeded as if § 523(a)(6) is the correct section. The Court will therefore proceed as if the § 523(a)(6) claim had been properly alleged.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). There is no objection to venue or jurisdiction over the parties.

statement of facts therefore does not conform to the requirements of Federal Rule of Civil Procedure 56(c), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. Debtor, when responding to the motion for summary judgment, also did not comply with Rule 7056. She did not state whether each of Plaintiff's numbered statements of fact are controverted or uncontroverted. However, Debtor did provide an affidavit in which she states under oath that, after a meeting with China and Frank Gordon, she was told that she was made a part owner of the two business since her "name needed to be listed as part owner to ensure a smooth operation of the business in the event of her brother suffering an untimely death."[3]

Because of these deficiencies, the Court could deny the motion without prejudice to refiling. However, in the interest of reaching the merits of the controversy, since Debtor does not object to any of the copies of state court pleadings and orders provided by Plaintiff, the Court will assume that the copies are true and correct. The Court therefore will proceed to rule on the motion based upon the following facts revealed by the copies of the state court pleadings.

The marriage of Plaintiff and her former spouse Frank Anthony Gordon was dissolved by judgment of the District Court of Johnson County, Kansas on June 18, 2009. Subsequent to her divorce, Plaintiff filed a petition in the Johnson County District Court, case number 12CV01720 (the Fraud Action), against her former spouse, Debtor (Frank's

---

[3] Doc. 43-1.

sister), John Gordon (Frank's father), Darlene Gordon (Frank's mother), Sunflower Adult Day Care Center (Kansas), and Sunflower Adult Day Care Center (New Mexico). She alleged in Count III she was damaged in her divorce property settlement by Frank Gordon's fraudulent misrepresentation of the extent of his interest in the two business defendants and in Count IV that Frank Gordon, Debtor, and Frank Gordon's parents conspired to defraud Plaintiff by either transferring a portion of Frank Gordon's interests in the two businesses to Frank Gordon's sister and/or Frank Gordon's parents for no consideration or by making material misrepresentations regarding Frank Gordon's interest in the businesses. The civil conspiracy count was the only claim against Debtor; there was no fraud claim alleged against Debtor.

A jury trial was held in May, 2013. The jury found that Frank Gordon committed fraud,[4] that all defendants entered into a conspiracy to defraud Plaintiff, and that punitive damages, in an amount to be determined later by the court, should be assessed against all defendants, except Frank Gordon's mother. Thereafter, Debtor and the other parties to the Fraud Action agreed to a Consent Journal Entry Granting Judgment Against all Defendants for All Claims Raised in the Pretrial Order (Consent Judgment).[5] It awarded Plaintiff a judgment of $500,000[6] against Debtor and others, jointly and severally.

---

[4] The jury was instructed that if they found Frank Gordon committed fraud, the amount of damages would be determined by the court.

[5] Doc. 34-4.

[6] The lump sum of $500,000 constituted both the actual and punitive damages.

4

In her motion for summary judgment, Plaintiff contends that the Fraud Action judgment is rendered nondischargeable by § 523(a)(6) under the doctrine of collateral estoppel. Resolution of the motion therefore requires close scrutiny of the pleadings and orders in the Fraud Action.

Court III of the Complaint in the Fraud Action stated a claim against Frank Gordon for fraudulent misrepresentation of his interests in the Adult Day Care businesses before, during, and after the divorce decree. Count IV of the Complaint alleged civil conspiracy to commit fraud. In the pretrial order, the civil conspiracy count was described as follows:

> (3) Civil Conspiracy. Husband, Sister-in-Law, Father-in-Law, Mother-in-Law, as well as Kansas Sunflower and New Mexico Sunflower, all conspired together to defraud Wife by transferring assets from Husband to Sister-in-Law, Father-in-Law and Mother-in-Law and by making material misrepresentations regarding the extent of Husband's ownership in Kansas Sunflower and New Mexico Sunflower, in an attempt to hinder, defraud, and harm Wife. All defendants had a meeting of the minds as to that object and said course of action, and misrepresented to Wife that Husband owned only 18% of New Mexico Sunflower and only 50% of Kansas Sunflower and created false documents reflecting same. All defendants, in furtherance of their conspiracy and with actual knowledge that their acts would cause Wife damages, devised said plan with an intent to carry out their fraudulent acts.[7]

The trial was bifurcated, with liability to be determined by the jury and damages on the fraud and civil conspiracy counts to be set by a separate trial to the court. As to

---

[7] Doc. 27-7, 2.

5

plaintiffs claims, the jury instructions included the following description of the conspiracy count:

> all defendants conspired to defraud plaintiff by providing her with false information regarding defendant Frank Anthony Gordon's ownership of Sunflower Adult Day Care, Incorporated (Kansas) and Sunflower Adult Day Care, Inc. (New Mexico) in order to induce her to enter in to the marital settlement agreement and, subsequently, to conceal their actions. [8]

With respect to the fraud claim against Frank Gordon, the jury was instructed that the elements were as follows: (1) that Frank Gordon made false representations of existing and material facts, (2) that Frank Gordon knew the representations to be false, (3) that the misrepresentations were intentionally made for the purpose of inducing Plaintiff to act upon them, and (4) that Plaintiff reasonably relied upon the representations.[9] The jury was further instructed that Plaintiff claimed a conspiracy of all defendants to falsely represent Frank's ownership interests in the businesses "in order to defraud her before, during, and after she entered into the martial settlement agreement."[10] The jury was instructed that a "civil conspiracy requires: (1) two or more persons; (2) an unlawful object to be accomplished; (3) a meeting of the minds as to the unlawful object or course of action; and (4) one or more unlawful overt acts."[11] The jury was also instructed that

---

[8] Doc. 34-4, 19

[9] *Id*. at 27.

[10] *Id*. at 28.

[11] *Id*.

6

"[i]f you find the plaintiff is entitled to recover actual damages," on the fraud and conspiracy claims, "you may consider whether punitive damages should be allowed. Punitive damages may be allowed in the jury's discretion to punish a defendant and to deter others from like conduct."[12]

The jury found in favor of the plaintiff on the fraud claim against Frank Gordon and that damages should be awarded by the court. It also found that all defendants engaged in the alleged fraudulent conspiracy, and that punitive damages should be assessed against all defendants except Darlene Gordon, Frank's mother. [13]

The Consent Judgment[14] granted Plaintiff judgment for $500,000 against all defendants (including Debtor), jointly and severally, under Counts III (fraud claim against Frank Gordon) and Count IV (civil conspiracy to commit fraud). The Consent Judgment states, "Plaintiff is entitled to judgment on the merits, including punitive damages" and "[t]o the extent necessary to support this Final Judgment relief granted herein, the material allegations of § 3 of the Pretrial Order are true."[15]

**DISCUSSION.**

Subsection 523(a)(6), the basis for Plaintiff's dischargeability claim, provides as follows:

---

[12] *Id.* at 29.

[13] Doc. 34-4, 1.

[14] Doc. 34-4, 3-6.

[15] Id. at 5.

7

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
> . . .
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

The Supreme Court has held that this subsection encompasses "only acts done with the actual intent to cause injury."[16] The fact that the word "willful" modifies the word "injury" indicates that "nondischargeability takes a deliberate or intentional *injury* not merely a deliberate or intentional *act* that leads to injury."[17] Without proof of both a willful act and malicious injury the objection to discharge fails.[18] Malicious "requires proof 'that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause the injury.'"[19] "Most courts have held that a wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse, is 'willful and malicious' within the meaning of section 523(a)(6)."[20] A creditor seeking to except a claim from discharge has a burden to prove by a preponderance of the evidence that the debt is nondischargeable.[21]

---

[16] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

[17] *Id.*

[18] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004).

[19] *Id., quoting Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995).

[20] *4 Collier on Bankruptcy* ¶ 523.12[2] at 523-93 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. rev. 2015).

[21] *Grogan v. Garner*, 498 U.S. 279 (1991).

8

"In determining whether a particular debt falls within one of the exceptions of section 523, the statute should be strictly construed against the objecting creditor."[22]

There is no doubt, as urged by Plaintiff, that a state court judgment compensating for willful and malicious within the meaning of § 523(a)(6) can be found to be nondischargeable under the doctrine of collateral estoppel without the need to relitigate the claim in bankruptcy court. The doctrine of collateral estoppel (issue preclusion) applies in discharge litigation under § 523.[23] It "prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit."[24] When the issue previously litigated was heard in state court, the bankruptcy court applies the law of collateral estoppel of the relevant state.[25] In Kansas, collateral estoppel operates to preclude the relitigation of issues that were actually decided in a prior proceeding.[26] The elements of collateral estoppel stated by the Kansas Supreme Court are: "(1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts . . .; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment."[27]

---

[22] *4 Collier on Bankruptcy* ¶ 523.05 at 523-21.

[23] *Grogan* at 284-85.

[24] *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).

[25] *4 Collier on Bankruptcy* ¶ 523.06 at 523-22.

[26] *Tilzer v. Davis, Bethune & Jones, L.L.C.*, 288 Kan. 477, 487, 204 P.3d 617, 624 (2009).

[27] *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284, 1290 (2002) (quoting *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256, 265 (1999)).

9

In this case, the parties in this adversary proceeding are Plaintiff China Arbuckle and Debtor Michelle Gordon, the same parties who litigated Count IV in the Fraud Action. For collateral estoppel to apply, Plaintiff must also establish that (1) in the Fraud Action it was determined that Debtor engaged conduct which caused Plaintiff to suffer a willful and malicious injury and (2) that such determination was necessary to support the $500,000 judgment.

Plaintiff has submitted copies of portions of the record of the Fraud Action, contending that they exhibit uncontroverted facts establishing these two elements of her collateral estoppel claim. The question is whether these state court records evidence that the $500,000 judgment was assessed against Debtor for willful and malicious injury, as required for denial of discharge under § 523(a)(6). It is clear that the jury did not make such findings. The instruction concerning conspiracy to commit fraud required a meeting of the minds as to the course of action, but did not require intent to harm Plaintiff as an element.[28] Likewise, the instruction on punitive damages stated only that such damages could be assessed "to punish a defendant and to deter others from like conduct." The intent of the defendants is not mentioned.

This leaves the stipulated judgment as the only possible source of a finding of willful and malicious injury. That judgment states that the material allegations of section 3 of the pretrial order, which describes the civil conspiracy claim, are true, but only "to

---

[28] Debtor has filed an affidavit in support of her motion for summary judgment in which she states that she was told that she was made a part owner of the businesses "to ensure a smooth operation of the business in the event of her brother suffering an untimely death." Doc. 43-1.

the extent necessary to support final relief granted herein."[29]  The portion of section 3 addressing the allegations of civil conspiracy includes the sentence that "[a]ll defendants, in furtherance of their conspiracy and with actual knowledge that their acts would cause Wife damages, devised said plan with an intent to carry out their fraudulent acts."[30]  Was this allegation of actual knowledge that the acts would harm Plaintiff necessary to support the $500,000 judgment?

Under Kansas law, a civil conspiracy is a means for imposing vicarious liability. The five elements of a civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."[31]  A civil conspiracy "is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy."[32]  But not all co-conspirators need to be active participants in the wrongful acts committed in the furtherance of the conspiracy.[33]  In this case, the fraud committed by Frank Gordon was an unlawful overt act sufficient for the finding of a civil conspiracy to commit fraud.  The awarding of damages against Debtor under the doctrine of civil conspiracy to commit fraud did not require a finding that she

---

[29] Doc. 34-4, 5.

[30] Doc. 27-7, 2.

[31] *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220, 1226 (1991 *(quoting Stodt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153, 161 (1984)).

[32] *Id*.

[33] *York v. Intrust Bank, N.A.*, 265 Kan. 271, 285, 962 P.2d 405, 418 (1998).

actually committed the fraud. The civil conspiracy count was a vehicle to impose liability upon Debtor, and other family member defendants, for Frank Gordon's fraud. A meeting of the minds between Debtor, Frank Gordon, and Frank Gordon's parents to misrepresent Frank Gordon's ownership interests in the businesses was sufficient. Kansas law did not require as a condition for liability for civil conspiracy that Debtor acted with "actual knowledge that [her] acts would cause Wife damages," as alleged in the Pretrial Order. Although damages as a proximate result of a civil conspiracy is a required element for civil conspiracy, knowledge that damages will result is not.

The other possible basis for finding the judgment sufficient for denial of discharge under § 523(a)(6) is the award of punitive damages. In Kansas, the award of punitive damages if governed by K.S.A. 60-3701. It provides in subsection (c) that "[i]n any civil action where claims for exemplary or punitive damages are included, the plaintiff shall have the burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud *or* malice."[34] In other words, punitive damages could be awarded when the jury found Debtor liable for fraud under the conspiracy count, even though there was no finding that Debtor acted toward plaintiff with willful or wanton conduct. Section 523(a)(6) is narrower in scope than K.S.A. 60-3701; not every award of punitive damages under Kansas law is nondischargeable. The fact that the jury and the trial court found that

---

[34] K.S.A. 60-3701(c) (emphasis added).

12

Plaintiff was entitled to punitive damages does not include a finding that Debtor caused a willful and malicious injury to Plaintiff.

For the forgoing reasons, the doctrine of collateral estoppel does not provide a basis to grant summary judgment to the Plaintiff. The issue of whether Debtor caused willful and malicious injury to Plaintiff was not determined when judgment was entered in Plaintiff's favor against Debtor in the Fraud Action. Such a determination was not necessary to support the $500,000 judgment against Debtor in Plaintiff's favor.

The Plaintiff's motion for summary judgment is therefore denied.

**IT IS SO ORDERED.**

###